**So Ordered.**

**Dated: October 7th, 2019**



**Frederick P. Corbit
Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re:<br><br>CYNTHIA JEAN BAUER,<br><br>        Debtor. | Case No. 18-02473-FPC7<br><br>**NOT FOR PUBLICATION** |
| CYNTHIA JEAN BAUER,<br><br>        Plaintiff,<br><br>v.<br><br>CITIGROUP MORTGAGE LOAN TRUST, INC., ASSET BACKED PASS-THROUGH CERTIFICATES, SERIES 2007-AMCI, a financial corporation,<br><br>        Defendant. | Adversary No. 18-80040-FPC<br><br>**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER TERMINATING DEED OF TRUST** |

THIS MATTER came before the court on the debtor's complaint to determine the validity of Citigroup Mortgage Loan Trust, Inc., Asset Backed Pass-Through Certificates, Series 2007-AMCI's ("Citigroup") mortgage lien. (ECF No. 1) The court has conducted a trial, considered the testimony of the witnesses, reviewed the evidence and exhibits, and listened to the arguments of counsel.

**FINDINGS OF FACT . . .** – Page 1

Based on the foregoing, the court makes the following findings of fact, conclusions of law, and order:

## FINDINGS OF FACT

1. Cynthia Bauer purchased her home at 3208 West 5th Avenue, Spokane, WA on July 21, 1999. (ECF No. 19)

2. In September 2006, Ms. Bauer refinanced her home with a $112,127.20 loan from AMC Mortgage Services, Inc. ("AMC"). This loan, the terms of which are set forth in a promissory note ("Note"), was secured by a deed of trust recorded on October 4, 2006 ("Deed of Trust"). (ECF No. 19)

3. Ms. Bauer made her last payment on the Note on April 4, 2008. (ECF No. 26) This payment was applied to Ms. Bauer's account, bringing the account current through January 1, 2008. (ECF No. 19)

4. In July 2008, Ms. Bauer received a document titled "Notice of Default" ("2008 Notice") that indicated she was delinquent on six payments from January 1, 2008 to the date of the notice in the total amount of $5,609.40. (ECF No. 24, Ex. C) Neither Citigroup nor the loan servicer has a copy of the 2008 Notice in its file. Citigroup provided no explanation why it does not have a copy of the 2008 Notice in its files. (ECF No. 27)

5. On September 3, 2008, ReconTrust, on behalf of the holder of the Note and the beneficiary of the Deed of Trust, sent a letter to Ms. Bauer in

**FINDINGS OF FACT . . .** – Page 2

response to her August 25, 2008 correspondence questioning the validity of the debt. (ECF No. 24, Ex. D) The letter verified the debt and provided Ms. Bauer with a payoff calculation for the obligations set forth in the Note. Neither Citigroup nor the loan servicer has a copy of Ms. Bauer's letter. Citigroup provided no explanation why it does not have a copy of the letter in its files.

6. In February 2014, the beneficiary's interest in the Deed of Trust and all rights of the lender as set forth in the Note were assigned to U.S. Bank National Association as Trustee for Citigroup. Citigroup is the current holder of the Note and assignee of the beneficiary's interest in the Deed of Trust. The loan has been serviced by Specialized Loan Servicing, LLC ("SLS") since December 2014. (*See* ECF No. 24, Ex. H) A notice of servicing transfer, dated December 22, 2014, was sent to Ms. Bauer. *Id.*

7. No records were produced at trial showing that the holder of the Note, the beneficiary of the Deed of Trust, or the servicer of the Note communicated with Ms. Bauer between September 3, 2008 and December 22, 2014—a span of more than six years.

8. The 2008 Notice was a "notice of default" as that term is used in RCW 61.24.030(7)(2008).[1] The 2008 Notice conforms to the requirements of

---

[1] The term "notice of default" is used in subsection (7) of RCW 61.24.030 in effect in 2008 and in subsection (8) in effect in 2019.

**FINDINGS OF FACT . . .** – Page 3

RCW 61.24.030(7)(2008) by including a description of the property, the county where the property is located, the auditor's file number, a statement that the beneficiary had declared Ms. Bauer to be in default, an itemized account of the arrears, an itemized account of all other costs Ms. Bauer must pay to reinstate the deed of trust, and the total amount required to cure payment defaults before a notice of sale would be recorded. As acknowledged by the parties, the copy of the 2008 Notice introduced by Ms. Bauer at trial is incomplete, but the pages presented mirror the statutory language. This fact, along with the large-font, bold-face type on the first page that states "Notice of Default," give rise to a reasonable inference that the 2008 Notice was intended as a Notice of Default pursuant to RCW 61.24.030(7)(2008). Ms. Bauer received the 2008 Notice, and at trial a copy was admitted into evidence, even though it is missing the last page.

9. On May 28, 2015, SLS sent Ms. Bauer a document titled "Default Notice and Notice of Intent to Foreclose" listing the total amount due as $88,526.85. (ECF No. 24, Ex. E) At trial, an SLS representative testified this document was more appropriately characterized as a "demand letter" that was sent as a matter of course after SLS began servicing the loan. (ECF No. 27) Based on this testimony, the May 28, 2015 notice was not a notice of default as that term is used in RCW 61.24.030.

**FINDINGS OF FACT . . .** – Page 4

10. There is no copy of a notice of default, as that term is used in RCW 61.24.030, in Citigroup's or SLS's files. Neither Citigroup nor SLS have a copy of the 2008 Notice in their respective files. Citigroup's records indicate that a second notice of default may have been issued on February 23, 2018, but no copy of that notice is in Citigroup's or SLS's files. Neither Citigroup nor SLS explained why it does not maintain a file with copies of the notices of default.

11. The parties dispute whether the Note was accelerated. Because neither Citigroup nor SLS maintained a complete file of communications with Ms. Bauer, the court cannot make a finding as to whether the Note was accelerated.

12. At some point, Quality Loan Service Corp. of Washington became the successor trustee on the deed of trust. (ECF No. 24, Ex. N)

13. On April 27, 2018, a notice of trustee sale ("Notice of Trustee Sale") for Ms. Bauer's home was recorded and it provided for a foreclose sale date of September 7, 2018. (ECF No. 24, Ex. N) No other notice of the trustee sale of Ms. Bauer's home was ever filed.

14. Ms. Bauer filed a chapter 7 bankruptcy petition on September 6, 2018.

15. Citigroup does not dispute that under RCW 61.24.030, a notice of default must be transmitted to the borrower before notice of trustee's sale can be filed. Here, neither Citigroup nor SLS has maintained a copy of a notice of default directed to Ms. Bauer, and thus they are unable to provide documentary evidence

**FINDINGS OF FACT . . .** – Page 5

to support their claim that the prerequisites to a nonjudicial foreclosure have been satisfied.

16. The holder of the Note learned of Ms. Bauer's default in 2008 and had the opportunity to commence a foreclosure action at that time but failed to do so.

17. More than ten years elapsed between the date of the first default identified in the 2008 Notice and the date the Notice of Trustee Sale was prepared. No evidence or argument was presented by Citicorp that explained the reason for the delay or provided an excuse for the delay. Under the facts of this case, this delay was unreasonable.

18. After preparation and delivery of the 2008 Notice to Ms. Bauer, the beneficiary of the Deed of Trust, which was initially AMC and is now Citigroup, did not act diligently to pursue and perfect nonjudicial foreclosure remedies under the Deeds of Trust Act, chapter 61.24 RCW ("the Act").

19. The failure of Citigroup and its predecessor to timely request that a trustee commence foreclosure, coupled with their failure to maintain a complete loan file has harmed Ms. Bauer. Because of the holder of the Note's unreasonable delay, records have been lost and Ms. Bauer does not have access to documents that could possibly have helped her case. For example, if Citigroup and its predecessor had maintained a copy of the 2008 Notice, and the third page of the

2008 Notice contained an acceleration clause, Ms. Bauer would have had a credible argument that the statute of limitations ran by 2014.

20. Ms. Bauer received a bankruptcy discharge of her prepetition liabilities on December 5, 2018, in case number 18-02473.

## CONCLUSIONS OF LAW

1. The court has jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(K).

2. Ms. Bauer's filing of her bankruptcy petition stayed the proposed trustee's sale of Ms. Bauer's home. 11 U.S.C. § 362(a).

3. Citigroup's right to proceed with *in personam* claims against Ms. Bauer were discharged pursuant to 11 U.S.C. § 727(b).

4. A discharge in bankruptcy may discharge the debtor's personal liability on a promissory note, but generally, a lien created by a deed of trust that secures the note is unaffected by a bankruptcy discharge. *Edmundson v. Bank of Am., N.A.*, 194 Wn. App. 920, 926 (2016).

5. Pursuant to RCW 4.16.040, a note and deed of trust are contracts in writing subject to a six-year statute of limitations.

6. Unless a lender accelerates all installments as a result of a default, when recovery is sought on an obligation payable by installments, the statute of limitations runs against each installment from the time it becomes due; that is,

from the time when an action might be brought to recover it. *Edmundson*, 194 Wn. App. at 930-31(citing *Herzog v. Herzog*, 23 Wn.2d 382 (1945)).

7. A notice of default "is evidence of resort to the remedies of the Deeds of Trust Act." *Edmundson*, 194 Wn. App. at 930 (citing RCW 61.24.030(8)). However, a notice of default does not definitively toll the statute of limitations, and instead, the determination of when a nonjudicial foreclosure action tolls the statute of limitations is a factual inquiry. *Cedar West Owners Ass'n v. Nationstar Mortg., LLC*, 7 Wn. App.2d 473, 488, 434 P.3d 554 (2019).

8. At least thirty days before a notice of sale can be recorded, a written notice of default must be transmitted to the borrower. RCW 61.24.030(7)(2008) and RCW 61.24.030(8)(2019).

9. Generally, transmitting the notice of default before the statute of limitations expires, "followed by timely recording a notice of trustee's sale" are the steps necessary prior to foreclosing on a deed of trust lien. *Edmundson*, 194 Wn. App. at 930.

10. Commencement of nonjudicial foreclosure proceedings tolls the six-year limitations period, but not indefinitely. *Bingham v. Lechner,* 111 Wn. App. 118, 127, 45 P.3d 562 (2002)(recording notice of trustee's sale tolled the statute of limitations only to the date of scheduled sale).

**FINDINGS OF FACT . . .** – Page 8

11. After transmitting a notice of default, a lender must act diligently to pursue and perfect nonjudicial foreclosure remedies. *Cedar West Owners Ass'n v. Nationstar Mortg., LLC*, 7 Wn. App.2d 473, 489 (2019).

12. Application of the principle articulated in *Cedar West*, that a lender must act diligently to pursue a foreclosure after the transmitting of a notice of default, is consistent with the Act because transmitting of the notice of default is one of the prerequisites to proceeding with a trustee's sale.

13. The lender, servicer, and trustee were required to act diligently to pursue and perfect nonjudicial foreclosure remedies, and they failed to do so. Instead, the 2008 Notice was not followed by a notice of trustee sale until April 27, 2018, almost *ten years* later.

14. The delay between the issuance of the first Notice of Default in this case (July, 2008) and the recording of the first and only Notice of Trustee's sale (April, 2018) was significantly greater than in the cases cited by Citigroup in which other courts ruled for the lender. In the other cases the delay between the notice of default and the first notice of sale ranged from one to nine months, much less than the 117-month delay in this case.[2]

---

[2] *See, 4518 S. 256th v. Karen L. Gibbon, P.S.*, 195 Wn. App. 423 (2016)(first notice of default dated July 9, 2008, first notice of trustee's sale recorded August 15, 2008; second notice of trustee's sale sent October 21, 2014, and second notice of trustee sale recorded on February 2, 2015); *Edmundson v. Bank of America, N.A.*, 194 Wn. App. 920 (2016)(notice of default dated October 23, 2014 and notice of trustee's sale dated January 16, 2015); and *U.S. Bank National Association v. Ukpoma,* 8 Wn. App. 2d 254 (2019)(notice of default sent February 1, 2008 and

**FINDINGS OF FACT . . .** – Page 9

15. Unlike this case, the opinions cited by Citigroup contain no facts indicating those lenders failed to maintain complete loan files.

16. This is an exceptional case and it is no longer reasonable to allow foreclosure because the law requires a lender to act diligently to pursue foreclosure remedies, Citigroup failed to provide an explanation for the significant delay in pursuing foreclosure remedies, and Citigroup and its predecessors failed to maintain a complete loan file.

17. The Act must be construed in favor of borrowers due to the relative ease with which lenders can forfeit borrowers' interests and the lack of judicial oversight in conducting nonjudicial foreclosure sales. *Klem v. Wash. Mut. Bank*, 176 Wn.2d 771, 789 (2013).

18. Strict compliance with the Act is required and procedural irregularities can invalidate a nonjudicial foreclosure sale. *Albice v. Premier Mortg. Servs. of Washington, Inc.*, 174 Wn. 2d 560, 567, 276 P.3d 1277, 1281 (2012), citing *Udall v. T.D. Escrow Servs., Inc.,* 159 Wn.2d 903, 915-16, 154 P.32d 882 (2007). Delay of ten years is a procedural irregularity under the Act.

19. The doctrine of laches is controlled by state law. *See Merchants Transfer & Warehouse Co.*, 337 U.S. 530 (1949). The purpose of laches is to

---

multiple notices of sale were issued, the first was dated November 7, 2008 and the "initiation date" for the last notice of sale was March 13, 2014).

**FINDINGS OF FACT . . .** – Page 10

prevent injustice and hardship. *Johnson v. Schultz*, 137 Wn. 584, 589 (1926) (quotation omitted).

20. The application of laches depends on the particular facts and circumstances of each case. *Lopp v. Peninsula Sch. Dist. No. 401*, 90 Wn.2d 754, 759 (1978). Accordingly, Washington courts have applied laches despite an applicable statute of limitations when a "special reason is shown why a shorter period should be enforced," or "some controlling equity" applies, or the facts present "highly unusual circumstances." *Auve v. Wenzlaff*, 162 Wn. 368, 374 (1931)*; Roger v. Whitham*, 56 Wn. 190, 195 (1909); Brost v. L.A.N.D., Inc., 37 Wn. App. 372, 375 (1984).

21. In Washington, the elements of laches are: (a) knowledge or reasonable opportunity for discovery of the cause of action; (b) an unreasonable delay in commencing the action; and (c) damage resulting from the unreasonable delay.[3] *Lopp*, 90 Wn.2d at 759. All three elements exist in this case.

22. Citigroup lost any right to foreclose on the Deed of Trust as a result of: (a) its failure and the failure of its predecessors to maintain a complete loan

---

[3] Washington law on laches is consistent with federal law and the laws of other states. *See, e.g., Herman Miller, Inc. v. Palazzetti Imports & Exports, Inc.*, 270 F.3d 298, 320 (6th Cir. 2001) (reciting the two elements of laches as (1) lack of diligence by the party against whom the defense is asserted and (2) prejudice to the party asserting it); 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2946 at 117 (2d ed. 1995) ("[L]aches does not result from a mere lapse in time but from the fact that, during the lapse of time, changed circumstances inequitably work to the disadvantage or prejudice of another if the claim is now to be enforced.").

**FINDINGS OF FACT . . .** – Page 11

file; and (b) its failure and the failure of its predecessors to diligently pursue foreclosure remedies.

23. The irregularities related to the lender's conduct in attempting to foreclose on its lien interest and the application of the laches doctrine are independent reasons that each support terminating Citigroup's lien interest.

THEREFORE, IT IS ORDERED that the deed of trust recorded under Spokane County Auditor number 5443346 on October 4, 2006, is terminated and title to 3208 West 5th Avenue, Spokane, Washington vests in Cynthia Bauer free and clear of that same deed of trust.

///End of Order///